**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| 4 PILLAR PROVISIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SUPERIOR FOODS COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: ______________ |

**COMPLAINT**

Plaintiff 4 Pillar Provisions, LLC ("4 Pillar"), by and through its undersigned counsel, brings this action against Defendant Superior Foods Company ("Superior"), and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff 4 Pillar is a specialty food procurement company that partners with major retailers to source and supply food products. 4 Pillar is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Florida. All members of 4 Pillar are citizens of the State of Florida.

2. Defendant Superior is a corporation incorporated under the laws of the State of Michigan, with its principal place of business in the State of Michigan.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between 4 Pillar and Superior and the amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney fees.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District and Defendant's principal place of business is located within this District.

## FACTUAL ALLEGATIONS

### A. 4 Pillar Secures Food Lion Spatchcock Chicken Program

6. In or around November 2024, 4 Pillar secured a significant opportunity with Food Lion LLC ("Food Lion"), one of the largest grocery chains in the country, to source vacuum-packaged spatchcock chicken for a featured program (the "Program") in approximately 750 stores between approximately March through October 2025 (the "Program Period").

7. Food Lion projected volume reaching up to 500,000 pounds of chicken during the Program Period. 4 Pillar and Food Lion anticipated the possibility of expanding the program to all 1,109 Food Lion locations at the conclusion of the Program Period.

8. Food Lion also informed 4 Pillar that it would be interested in exploring other products, including ribs, should the Program be successful.

9. To fulfill the Food Lion Program, 4 Pillar approached Superior to produce the spatchcock chicken. 4 Pillar approached Superior based upon Superior's reputation for producing quality poultry products.

10. 4 Pillar informed Superior of the projected volume during the Program Period and potential for additional volume afterward.

11. 4 Pillar explained Food Lion's expectations regarding the specifications and requirements for the spatchcock chicken to Superior, and Superior understood and acknowledged those specifications and requirements.

12. On or around February 24, 2025, Superior provided 4 Pillar and Food Lion with a sample of the spatchcock chicken. Food Lion informed 4 Pillar that this sample met its specifications and requirements.

13. Based on this conforming sample, 4 Pillar engaged Superior because Superior represented its ability to competently and satisfactorily produce the remainder of the spatchcock chicken consistent with the sample.

14. Food Lion approved Superior as the manufacturer.

15. On or about March 7, 2025, Superior requested an in-writing approval from Food Lion that it would commit to the purchase of a minimum of 240,000 pounds of spatchcock chicken. That same day, 4 Pillar forwarded to Superior a written commitment from Food Lion to purchase that amount of spatchcock chicken.

**B. Superior Engages Cougle Foods without 4 Pillar's Knowledge or Approval**

16. After approving the initial sample on or about February 24, 2025, Food Lion requested a second sample that included the complete product labeling. This sample was provided no later than March 10, 2025.

17. On or about March 10, 2025, Food Lion notified 4 Pillar that the new sample did not conform to the original sample that formed the basis of the bargain and for which Food Lion had issued the 240,000 pounds guarantee. 4 Pillar informed Superior that the chicken needed to be straightened and flattened in accordance with the original sample. Superior agreed to make the requested changes.

18. What 4 Pillar did not know was that Superior did not produce the new sample. Instead, Superior engaged Cougle Commission Company ("Cougle") to produce the sample

without the knowledge or consent of either Food Lion or 4 Pillar. Nonetheless, Superior continued to interact with 4 Pillar as though it would be producing the spatchcock chicken itself.

19. Neither Food Lion nor 4 Pillar had an opportunity to investigate or determine whether Cougle had the ability to satisfactorily perform the work. Had 4 Pillar known that Superior would not be producing the spatchcock chicken and instead would be outsourcing it to Cougle, it would not have engaged Superior.

20. On or about March 14, 2025, Superior sent 4 Pillar an image of a new sample that appeared to conform to the original sample. On the basis of that representation, 4 Pillar agreed to move forward.

21. On or about March 20, 2025, 4 Pillar conveyed written purchase orders to Superior for the initial production of spatchcock chicken. The purchase orders specified the price and the quantity of the spatchcock chicken.

**C. Delivery of the Defective Product**

22. On or about April 2, 2025, only shortly before shipment and at a point when any objection would have jeopardized timely fulfillment, 4 Pillar first learned of Cougle's involvement.

23. Between approximately April 9 and April 15, 2025, the first cases produced by Cougle were delivered to Food Lion distribution centers. The product bore no resemblance to the approved samples. The birds were not properly flattened, and the vacuum packaging was riddled with holes, leaks, and failures that rendered the product unfit for retail sale.

24. On or about April 23, 2025, Food Lion notified 4 Pillar via email that the initial product had significant errors and demanded compensation for the defective product. In that same email, a Food Lion representative stated: "This needs to be remedied or we won't be able to move forward with this spatchcock project or work together again in the future."

25. On or about May 27, 2025, 4 Pillar agreed to allow Food Lion a deduction of $50,688 from payments for approximately 84,480 pounds of defective spatchcock chicken. The cost of this deduction was ultimately borne by Cougle.

26. On or about June 20, 2025, Food Lion notified 4 Pillar that it continued to have problems with the product and, despite markdowns, was unable to sell the spatchcock chicken. Food Lion demanded that 4 Pillar retrieve the remaining inventory or Food Lion would donate the product and bill 4 Pillar for it.

27. Despite 4 Pillar's requests, neither Superior nor Cougle agreed to reproduce the product with correct specifications.

28. On July 29, 2025, Food Lion told 4 Pillar that it never would have accepted the product had it known "the overall manufacturing defect with the packaging."

**D. Admission of Fault and Broken Promise to Pay**

29. On multiple occasions, Superior's Chief Executive Officer ("CEO") Jim Osterhaven acknowledged that the product had been defective. Although Mr. Osterhaven placed the blame on Cougle, Superior, as the contracting party, remained solely responsible to 4 Pillar for the performance and quality of the product despite its election to subcontract production.

30. On or about August 5, 2025, Food Lion informed 4 Pillar that Food Line would be billing Superior, as the approved manufacturer, $173,264 for the remaining inventory.

31. On or about September 12, 2025, Superior's CEO, Mr. Osterhaven, informed 4 Pillar that Superior would pay the Food Lion bill if 4 Pillar would have Food Lion issue the bill in 4 Pillar's name. According to Mr. Osterhaven, that would enable Superior to file an insurance claim that could be used to pay Food Lion.

32. Based on this representation, 4 Pillar asked Food Lion to reissue the invoices in 4 Pillar's name. On or about October 9, 2025, 4 Pillar sent the reissued buy back invoices from Food Lion to Superior. The final buy back charge was $168,357.44.

33. After inducing 4 Pillar to rely on his assurances and to undertake the administrative burden of reissuing the invoices, Mr. Osterhaven repudiated Superior's commitment entirely. On October 18, 2025, Mr. Osterhaven wrote: "after discussing with our legal counsel ... the status with Superior paying for this is not going to happen ... we do not have any liability here," and on October 24, 2025, he directed all further communications to Superior's attorneys.

**E. Damages to 4 Pillar's Business**

34. Due to Superior's breach, Food Lion terminated the Program, as well as the entire 4 Pillar relationship going forward.

35. The financial terms of the program are documented with precision. Food Lion committed to purchasing the product at $3.50 per pound, and 4 Pillar's agreed-upon all-in cost from Superior was $2.80 per pound, yielding a per-pound gross margin of $0.70.

36. This was 4 Pillar's inaugural program as a newly formed procurement company. Superior was made aware from the outset — including in discussions at Superior's offices — that this was 4 Pillar's first major retail opportunity and that the program's success was foundational to the company's commercial viability.

37. Food Lion also stopped discussions about additional programs with 4 Pillar that were already under negotiation with Food Lion, such as contracts for cooked ribs, chicken cutlets, and diced chicken. Contracts and opportunities for other businesses owned by 4 Pillar's members have been cancelled, and other retailers have expressed reluctance to engage with them going forward.

**COUNT I — BREACH OF SALES CONTRACT**

38. 4 Pillar realleges and incorporates by reference all preceding paragraphs.

39. 4 Pillar contracted with Superior, not Cougle. Superior is liable for the performance regardless of who performed the work. MCL § 440.2210(1).

40. Superior materially breached by delivering a product that failed to match approved samples, violated specifications requiring birds to lay flat, and contained systemic packaging defects. The delivered product failed every one of these specifications.

41. As a direct and proximate result of Superior's breach, 4 Pillar has suffered damages in an amount to be proven at trial.

**COUNT II — BREACH OF EXPRESS WARRANTY**

42. 4 Pillar realleges and incorporates by reference paragraphs 1-30.

43. A sample made part of the basis of the bargain constitutes an express warranty that the goods will conform to it. MCL § 440.2313(1)(c).

44. Superior's initial sample products, which showed flattened birds and intact vacuum packaging, together with Superior's assurances that it understood and would meet the specifications, created express warranties under MCL § 440.2313. Food Lion approved the Program based on those samples, and when later samples deviated, Superior expressly committed to bringing them back into conformity.

45. Superior materially breached these express warranties by delivering product that failed to conform to the approved samples in every material respect.

46. As a direct and proximate result of Superior's breach of express warranty, 4 Pillar has suffered damages in an amount to be proven at trial.

**COUNT III — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

47. 4 Pillar realleges and incorporates by reference paragraphs 1-30.

48. The goods were not merchantable under MCL § 440.2314. Vacuum-sealed poultry should not leak, contain holes, or display freezer burn.

49. Superior knew the product was destined for a premium retail program with documented minimum and projected volumes and nevertheless selected an undisclosed subcontractor whose product could not meet the intended purpose.

50. As a direct and proximate result of Superior's breach of the implied warranty of merchantability, 4 Pillar has suffered damages in an amount to be proven at trial.

**COUNT IV — FRAUDULENT MISREPRESENTATION**

51. 4 Pillar realleges and incorporates by reference paragraphs 1-30.

52. Superior provided samples knowing 4 Pillar would rely on them to secure the Food Lion program and represented, both explicitly and implicitly, that it would manufacture product consistent with those samples. In reality, Superior had already outsourced all production to Cougle without disclosure, depriving 4 Pillar of any opportunity to evaluate the subcontractor or confirm its capabilities.

53. Rather than disclose the true source of production, Superior representatives acted in a manner to reinforce the impression that Superior controlled production. Superior did not reveal Cougle's involvement until the point at which changing course would have jeopardized timely delivery.

54. Had Superior been forthright, 4 Pillar could have vetted the processor, addressed deficiencies directly, or taken protective steps. Instead, Superior's misrepresentations placed 4 Pillar's reputation and a critical retail program in the hands of an undisclosed processor.

55. Superior's misrepresentations were material, made with knowledge of their falsity or with reckless disregard for the truth, and made with the intent that 4 Pillar rely upon them. 4 Pillar did reasonably rely on those misrepresentations to its detriment.

56. As a direct and proximate result of Superior's fraudulent misrepresentations, 4 Pillar has suffered damages in an amount to be proven at trial.

**COUNT V — BREACH OF ORAL CONTRACT**

57. 4 Pillar realleges and incorporates by reference paragraphs 1-30.

58. Superior's President, Jim Osterhaven, made a clear and definite promise to 4 Pillar: Superior would accept the Food Lion chargeback invoices, file an insurance claim, and make 4 Pillar whole for the $168,357.44 in losses — on the specific condition that 4 Pillar restructure the invoices in its own name rather than having Food Lion invoice Superior directly. This constituted an unilateral contract offer in which Superior specified the exact act of performance required for acceptance.

59. 4 Pillar accepted Superior's offer by fully performing the requested act: on October 9, 2025, 4 Pillar restructured the invoices and provided Superior with the complete invoice backup totaling $168,357.44. Upon 4 Pillar's completion of performance, the unilateral contract was formed and Superior's promise to pay became binding and irrevocable.

60. The essential terms of the agreement were sufficiently definite: the identity of the parties, the obligation to be performed, the amount, and the condition of payment were all clearly established.

61. The consideration supporting Superior's promise was 4 Pillar's act of redirecting the Food Lion invoice through itself rather than allowing Food Lion to invoice Superior directly. By doing so, 4 Pillar accepted direct, primary liability to Food Lion for the full chargeback amount.

This constituted a legal detriment that 4 Pillar would not have borne in the same manner had Food Lion invoiced Superior directly.

62. Superior's promise was an original promise, not a collateral one, and therefore falls outside the statute of frauds under MCL § 566.132(1)(b). Superior was not merely guaranteeing 4 Pillar's pre-existing obligation to Food Lion but rather assuming direct and primary responsibility for an obligation rooted in Superior's own defective production. Superior's promise was the direct mechanism by which it sought to control the payment channel for a liability that was fundamentally its own.

63. Superior materially breached the unilateral contract when, on October 18, 2025, Mr. Osterhaven repudiated Superior's commitment in writing.

64. As a direct and proximate result of Superior's breach of the contract, 4 Pillar has suffered damages of not less than $168,357.44, plus pre- and post-judgment interest.

**COUNT VI — PROMISSORY ESTOPPEL**

65. 4 Pillar realleges and incorporates by reference paragraphs 1-30.

66. Superior made a clear and definite promise to accept responsibility for the Food Lion chargeback invoices and to make 4 Pillar whole. Superior should reasonably have expected that 4 Pillar would rely on that promise by restructuring and reissuing its invoices as Superior requested.

67. 4 Pillar did in fact reasonably rely on Superior's promise to its detriment by undertaking the administrative burden of restructuring the invoices, foregoing other avenues of recovery, and providing Superior with the complete invoice backup on October 9, 2025.

68. Mr. Osterhaven's October 18, 2025 refusal to honor his repeated commitments — after months of representations that Superior would handle the Food Lion invoice — caused direct

and quantifiable harm to 4 Pillar. Injustice can only be avoided by enforcement of Superior's promise in an amount of not less than $168,357.44, plus pre- and post-judgment interest.

**COUNT VII — UNJUST ENRICHMENT**

69. 4 Pillar realleges and incorporates by reference paragraphs 1-30.

70. Superior made a clear and definite promise to accept responsibility for the Food Lion chargeback invoices and to make 4 Pillar whole. Superior should reasonably have expected that 4 Pillar would rely on that promise by restructuring and reissuing its invoices as Superior requested.

71. Under Michigan law, unjust enrichment requires: (1) the receipt of a benefit by the defendant from the plaintiff; and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. Where these elements are met, the law implies a contract to prevent unjust enrichment.

72. Superior received a concrete and measurable benefit from 4 Pillar's act of restructuring and redirecting the Food Lion chargeback invoices: Superior avoided Food Lion's direct demand for payment of $168,357.44 and avoided being invoiced directly by Food Lion for the losses arising from its own defective production. 4 Pillar conferred this benefit at Superior's specific request and for Superior's direct financial advantage.

73. It would be inequitable for Superior to retain the benefit of having avoided direct liability to Food Lion while leaving 4 Pillar exposed to the full $168,357.44 chargeback obligation, a liability 4 Pillar accepted solely at Superior's direction and in direct reliance on Superior's promise to pay. Superior induced 4 Pillar to restructure the invoices, Superior obtained the benefit of that restructuring by avoiding Food Lion's direct demand for payment, and Superior then refused to honor the obligation that was the entire premise of the arrangement.

74. Superior has been unjustly enriched by its retention of this benefit without paying 4 Pillar the value of the benefit conferred, which is not less than $168,357.44, and the law implies an obligation on Superior's part to make restitution to 4 Pillar in that amount.

**DAMAGES**

75. As a direct and proximate result of Superior's conduct, 4 Pillar has suffered damages including:

- Food Lion chargeback costs in the confirmed amount of $168,357.44,
- Lost profits on the guaranteed 240,000-pound minimum contract, calculated at $0.70 per pound, totaling $168,000;
- Lost profits on the documented projected program volume of 500,000 pounds, less the guaranteed minimum, totaling $182,000;
- Consequential damages arising from the total destruction of 4 Pillar's commercial relationship with Food Lion, including loss of the anticipated program expansion to all 1,109 Food Lion stores in 2026 and loss of additional programs already under discussion, including cooked ribs, chicken cutlets, and diced chicken, in an amount to be determined at trial but not less than $350,000;
- Consequential damages arising from the severe, lasting damage to 4 Pillar's commercial relationships with other retailers and the broader food industry;
- All attorneys' fees and costs of collection where permissible under applicable law; and
- Pre- and post-judgment interest.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff 4 Pillar Provisions, LLC respectfully requests that this Court:

a) Enter judgment in favor of 4 Pillar and against Superior on all counts;

b) Award 4 Pillar compensatory damages in an amount to be proven at trial, but not less than $868,357.44;

c) Award 4 Pillar all consequential and special damages recoverable under Michigan law;

d) Award 4 Pillar pre- and post-judgment interest;

e) Award 4 Pillar its attorneys' fees and costs of litigation where permitted by law; and

f) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

4 PILLAR PROVISIONS LLC

By:

/s/ *Michael A. Baudinet*____________
Michael A. Baudinet (VA Bar #83633)
Dolman Law Group
800 N. Belcher Road
Clearwater, FL 33765
Telephone: (727) 451-6900
Facsimile: (727) 451-6907
michael.baudinet@dolmanlaw.com

*Counsel for Plaintiff 4 Pillar Provisions, LLC*

Dated: August 25, 2026